# DREW *v.* TOWLE.

30  531
66  165
30  531
67  561

Where, on the 27th day of May, 1848, the interest was paid on a promissory note to April 1, 1849, and was indorsed accordingly, and on the 10th day of January, 1849, the sum of $175 was paid, and indorsed " in part of the within note, it was *held* that the payer was not entitled to be allowed interest on the sum of $175 from the date of the payment to April 1, 1849.

The consideration paid and interest thereon is the rule of damages in this State, in an action upon the covenant of general warranty, where there has been a complete failure of title, and the possession has been surrendered to the holder of the paramount title, without suit, or the expenses of litigation.

A grantee of land under a deed containing a covenant of warranty, who goes into possession of it, owes no duty to the grantor to remain in possession for the purpose of litigating a question of the increased value of the estate, while in possession of himself and those under whom he claims, but may at once surrender the possession to any one having a paramount title, and no deduction will be made from the damages to which he would otherwise be entitled, by reason of any such claim of betterments of which he might have availed himself.

Rests are not allowable in the computation of interest upon the amount of the consideration paid for the land, within the rule of damages before stated, in the action upon the covenant of general warranty.

And the rule cannot vary, in this respect, where the remedy sought is by way of set-off, instead of the action of covenant.

The judgment rendered against a trustee in foreign attachment, when paid, will have the same effect to discharge the claims of the principal debtor against the trustee as a voluntary payment, to the extent of it; and in the computation of interest upon such claims the ordinary rule is to be followed which prevails where partial payments are made.

The possession of land, holden by virtue of a contract of sale, is not adverse until full payment for it is made according to the agreement.

The construction of written agreements is matter for the court, and not for the jury.

It is too late, after verdict, to except to a note which has been read in evidence by the defendant, on account of a variance between the note and the specification in the set-off.

Where a set-off is filed and money is paid into court, as the balance due to the plaintiff, and the plaintiff's costs also, and it is found that a greater sum is due than the sum so paid as the balance due him, the plaintiff will be entitled to a judgment for the excess and interest thereon, and his costs since the payment into court. But if it be ascertained and determined that a smaller sum, or a sum precisely equal to that paid as the balance, was due to the plaintiff, then the defendant is entitled to a judgment for his costs incurred since the time of said payment.

Drew *v.* Towle.

ASSUMPSIT. The writ was dated the fourth day of March, A. D. 1850.

The action was commenced to recover the amount of two promissory notes, dated November 30th, 1847, for two hundred dollars each, and payable, the first in one year and the second in two years from said date, with interest; and also a note for one hundred and ninety-nine dollars, with interest after the first day of April, 1849. Upon each of the two hundred dollar notes is the following indorsement: " 27 May 1848 rec'd interest on the within until the first day of April next." And upon the note due in one year is the following indorsement: " January 10, 1849 rec'd in part of the within note one hundred and seventy-five dollars." The defendant claimed to be allowed interest upon this indorsement from the said 10th day of January.

It appeared that there was included in said two hundred dollar notes the sum of $170,13, for a certain piece of land, conveyed to the defendant by the plaintiff on said 30th day of November, by a warrantee deed in common form. For this land the defendant filed a claim for damages in offset to the action. The defendant claims interest upon said sum of $170,13, and also claims to make a rest in the computation of this interest and the interest on said indorsement of $175, at the date to which interest was paid upon the notes, the first day of April, A. D. 1849.

The offset also included a note, signed by the plaintiff, dated November 30th, 1847, for the sum of $42,25, as stated in the offset, and which was duly indorsed to the defendant before the commencement of this suit.

The set-off was filed November 13th, 1850, and on the 17th of February, 1852, the sum of $90 was paid into court, with costs up to that time, as the balance due the plaintiff.

The defendant had before, on the 27th day of May, 1851, been duly adjudged trustee of Mercy K. Drew, and had paid

the amount of the judgment against him, being for the sum of $130,34.

At the trial, the defendant produced and proved the deed of the plaintiff to him, dated the 30th day of November, 1847. And he also proved that in 1834, one Thurston conveyed the whole of lot numbered 19, in the south division of lots in Eaton, (the land in question being the west half of said lot,) to one Tucker, by a deed duly executed, acknowledged and recorded, and traced the title to the whole of said lot from said Tucker to one Miller, and proved that the east half had been occupied by sundry persons under said Tucker and his grantees till 1850, and that the whole of said lot had been occupied by one Matthewson, under said Miller, from 1850 to 1852.

The plaintiff proved that one Josiah Drew entered upon the west half of said lot in 1829, under a contract to purchase the same of said Thurston for the sum of $105, and remained in possession under the contract until 1837, when he paid said sum of $105, and took a deed from said Thurston, and afterwards, on the 14th day of August, 1838, sold and conveyed the same to the plaintiff. It was admitted that Thurston was formerly the owner of the land. It appeared that from the date of the deed to him in 1837, the said Josiah Drew, and after him the plaintiff, continued in actual occupation of the land in question until her deed to the defendant of November 30th, 1847, and cleared a portion of the land, and that the defendant entered under his deed, and remained in possession until 1849 or 1850.

Upon this evidence the plaintiff's counsel contended that she had a good title by twenty years possession, or if not, that the evidence on the part of the plaintiff was competent to show that the premises had been increased in value by improvements of the plaintiff, and those under whom she claimed, and that since the defendant might have remained in possession, and insisted on his betterments, the whole consideration could not be recovered back. But the court

ruled that the possession of Josiah Drew, under his contract, was not adverse until payment in 1837, and that the defendant was not obliged to submit to a suit and set up a claim for betterments under the general issue. There was no replication in the case, and it did not appear that the defendant had any notice that the plaintiff would set up any claim on account of betterments before the evidence was offered on trial.

Neither party having expressed any wish to have the jury pass upon any other questions, the court below directed that a verdict should be entered in accordance with said rulings, subject to the opinion of this court.

At the trial, the defendant produced in evidence a note, which his counsel read as a note for the sum of forty-two dollars and seventy-five cents, and no objection was then made in regard to the amount of the note, or its admissibility under the set-off, and the parties agreed that the court might compute the interest upon the notes, and that a verdict should be entered according to the opinion of the court. But afterwards, when the papers were furnished the court, under that agreement, it was insisted by the plaintiff's counsel that the true reading of the note is twenty-five cents and not seventy-five, and if not, that the smaller sum only can be allowed under the offset.

It was ordered that the questions arising in this case be transferred to this court, and that a new trial be had, or judgment be entered for either party, and for such sum as said court, upon a consideration of this case and an inspection of said note, might order.

*Hatch*, for the plaintiff.

*Small*, for the defendant.

Woods, C. J. Interest is not allowable on the indorsement of January 10, 1849. The sum of $175 was paid

and received in part of the principal of the note. The interest had been adjusted prior to that date, to wit, May 27, 1848, to the first of April, 1849, on each of the $200 notes. There was, then, nothing to which the payment of the $175 upon the note for $200, which fell due in one year, to wit, November 30, 1848, could be applied, but the principal of the note. The indorsement is in these words and figures: " January 10, 1849, received in part of the within note one hundred and seventy-five dollars." Although the note, by the terms of it, fell due November 30, 1848, yet the interest being paid to April 1, 1849, and indorsed thereon, furnishes evidence of an agreement of the parties for an extension of the time of payment of the principal until that period. *Crosby* v. *Wyatt*, 10 N. H. Rep. 318. The principal was not due, then, until that time. What induced the defendant to make the payment before it became due, or the plaintiff to receive it, does not appear. But whatever might have been the motive, we are not to presume that it was the understanding of the parties, to be inferred from the face of the transaction, that the plaintiff agreed or understood that she was to pay or allow interest on the sum of the indorsement, to the time to which the payment of the principal was agreed to be delayed. The mere fact of the payment and receipt of the money, can furnish no proper grounds for such an inference ; and the law will not raise a promise by implication on the part of the payee, to pay or allow interest upon a payment of money made in discharge of a subsisting debt. We think this case does not differ from the case of a payment made by the maker of a note not bearing interest, and not due at the time of the payment. It could not be inferred that it was agreed by the parties, that interest was to be allowed by the payee upon the sum paid, from the date of it to the time when the residue should become due and payable. No such contract could be implied from the transaction. It could be understood only as the pay-

ment and receipt of the money in part discharge of the principal, and to the extent of the payment, and no more.

Simple interest only upon the sum of $170,13, the price paid for the land, is allowable to the defendant. The price paid, and interest, is the rule of damages in this State, in an action upon the covenant of warranty where there has been a complete failure of title, and the possession has been surrendered by the purchaser to the holder of the paramount title, without suit or the expenses of litigation. *Willson* v. *Willson*, 5 Foster's Rep. 229, and cases there cited. We are not aware that rests in the computation of the interest have ever been allowed or are allowable, in cases of that character, within the rule stated. And we can see no ground upon which the mode of computing the interest can be properly varied from the ordinary rule where redress is sought by way of set-off, instead of the action of covenant. The rule of damages cannot be varied in such a case by the mere election of remedies ; and such would be the effect of allowing the rests claimed by the defendant.

The sum of $130,34, being the amount of the judgment rendered against the defendant, as the trustee of the plaintiff, having been paid by him by force of the statute, must be treated as a payment, to that extent, of the claims in suit against the defendant, and is to be allowed in the same manner, and must have the same effect as if the same had been a voluntary payment to the plaintiff herself. Such judgment and payment will go in discharge of the claim attached by the process, to the extent of the amount of it, and is in legal effect and operation a payment *pro tanto*. Rev. Stat. ch. 208, § 38. Inasmuch as the payment would exceed the interest due at that period, the same is to be deducted from the sum of the principal and interest due to the plaintiff upon the claim in suit in his favor, and simple interest is to be computed upon the balance.

The claim of the defendant to a deduction from the consideration paid for the land, provided the title to the land

conveyed has failed, cannot be sustained. Rev. Stat. ch. 190, §§ 5, 6.  Whatever might be the rights of these parties in reference to betterments, provided an action had been commenced against the defendant, and he had been defeated, and betterments had actually been recovered by him, we are of the opinion that under existing circumstances the defendant was in no way liable to the plaintiff by reason of the mere possibility that in the event of such a suit he might have recovered something for the increased value of the estate.   The defendant had an undoubted right, upon being satisfied of the invalidity of his title, to abandon the possession of the premises, and thereby to avoid the necessity of litigation and its attendant perplexities, and expenses. He owed the plaintiff no duty to remain in possession and sustain the burthen of the defence when the title was invalid, in order by possibility to become the recipient of the value of betterments, more or less, and in that way to compensate himself to some extent for the injury sustained by the failure of the plaintiff to keep her covenants, or in that way to create a fund, out of which remuneration might be made for the loss which he has sustained by her fault.  Now, the right of the defendant was at any period to give up the possession to the rightful owner, upon claim made.   He was under no obligation, either of duty or contract, to withhold it.   He was not bound to seek redress through a litigation that might turn out to be fruitless, with the party having the title.

He had a right to look to the covenants in his deed for indemnity for the injury and loss sustained by the failure of the plaintiff to keep them.   If the title were known to the defendant to be invalid, would he be justified in litigating the question at the expense of the plaintiff?   A party, it is true, is entitled to recover of the covenantor all reasonable costs attending a litigation of the question of title.   But would the costs be reasonable, within that rule, that should be incurred in a litigation known to the party to be utterly

fruitless ?   It is doubtful, to say the least of it.   And it cer-
tainly has not yet been determined that where the party
should go into a litigation upon his own mere motion, for
the purpose of testing the question of betterments, that the
covenantor would be answerable for the costs, or to indemnify
the party from loss by reason of the litigation.   And it is
only upon a failure of title that betterments are recoverable.
It is the reasonable costs attending the litigation to test the
title, that has been determined thus far to be a proper item
to be recovered in an action of covenant, in addition to the
consideration paid.   *Kingsbury* v. *Smith*, 13 N. H. Rep. 109.

It is fully settled in this State, that the possession of land
by a party holden by virtue of a contract of purchase, is not
adverse until full payment for it has been made, accord-
ing to the terms of the agreement.   *Wendell* v. *Moulton*, 6
Foster's Rep. 41.   Here was plainly no title acquired to the
premises by adverse possession.   Here, then, was a total
failure of title, and of the consideration upon which the
agreed price of the land was paid, and in that event it seems
to be conceded that the set-off for the amount of the pay-
ment, as claimed, may be rightfully allowed.   No question
upon this point is suggested.

The question as to the actual amount of the note of No-
vember 30, 1847, specified in the notice of set-off as a note
for $42,25, whether it be a note for $42,25, or for $42,75,
and the further question whether if it be a note for $42,75,
more than the amount of a note for $42,25, can be recover-
ed by or allowed to the defendant, upon his set-off, in which
it is specified as a note for $42,25, are raised in this case.

As to the first question, it is one properly for the consider-
ation of the court, and not for the jury.   The construction
of all written contracts is matter for the court.   Whether
this is a note for $42,25, or $42,75, is to be determined by
the court, upon inspection.   The execution of the note is
not disputed, and so it is a written contract, and its con-
struction, or, in other words, what it contains, and means, is

to be settled by the court. We think, moreover, that if the note upon inspection appears to us, and is found to be a note for $42,75, that the full amount of it must be allowed: that it is now too late, after verdict, to except to the variance between the specification filed and the note given in evidence. Justice demands that the exception which is one of variance, should not be allowed if the note turns out to be a note for $42,75, in fact. If the note is found to be a note for $42,25, it is understood that there is no claim insisted upon for the allowance of a larger sum, merely because the note was erroneously read as being for a larger sum.

Upon inspection of the note, we are all of the opinion that it is for the sum of $

If, upon computing the interest in the manner stated, and ascertaining the amount of the claims of the respective parties, in accordance with the principles before indicated as applicable to this case, it be found that a greater balance was due to the plaintiff than $90, at the time of the payment of that sum into court, then the plaintiff will be entitled to a judgment for the excess, and interest thereon, and the costs of the suit from that time. But if it be ascertained that a smaller sum, or precisely $90, were due to the plaintiff, then the defendant will be entitled to his costs incurred since the time of said payment. Rules of Court 78.

*Let judgment be entered according to the principles of the foregoing opinion.*