Grafton
No. 2009-527

ROBERT P. HULL *& a.*

v.

GRAFTON COUNTY *& a.*

Argued: March 24, 2010
Opinion Issued: October 19, 2010

*William L. O'Brien*, of Concord, by brief and orally, for the petitioners.

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Elizabeth A. Bailey* and *Karyl Roberts Martin* on the brief, and *Ms. Bailey* orally), for the respondents.

BRODERICK, C.J. The petitioners, Robert P. Hull and John J. Babiarz, appeal from an order of the Superior Court (*Bornstein*, J.) denying, in part, their motion for summary judgment, denying their request for equitable relief and attorney's fees, and granting the cross-motion for summary judgment of the respondents, Grafton County, its Commissioners and Treasurer, and the Chair and Clerk of the Grafton County Convention (Convention). We affirm.

I

The following facts were either found by the trial court or are supported by the record. On May 21, 2008, eighteen of the twenty-six members of the Convention met in Concord to vote on the salaries for Grafton County's elected officials. The meeting had been noticed in the State of New Hampshire House Record on May 16; no other public notice had been given. At the meeting, the Convention adopted, by a vote of fifteen to three, a resolution to increase by 2.3 percent the salaries of the County Attorney, High Sheriff, Register of Deeds, and Treasurer for the 2009 fiscal year. The Convention also voted unanimously that the County Commissioners' salaries should remain at the 2008 fiscal year level.

On June 24, 2008, Hull requested documents related to the May 21 meeting, which the County's counsel provided on June 30. Shortly thereafter, the petitioners, through counsel, informed the respondents' counsel that the notice for the May 21 meeting was deficient because it failed to comply with the requirements of RSA 91-A:2, II and RSA 24:9-d. Subsequently, the Convention met again on July 21 and voted to ratify the actions

taken at the May 21 meeting. The approved salaries took effect in January 2009; the aggregate salary increase for the 2009 fiscal year resulting from the 2.3 percent increase for the County Attorney, High Sheriff, Register of Deeds, and Treasurer was $4,288.78.

In October 2008, the petitioners filed suit, alleging that the Convention failed to follow the notice requirements of RSA chapter 91-A and RSA 24:9-d for its May 21 meeting, thus rendering the Convention's vote "legally ineffective." Further, they alleged that the Convention could not ratify its actions at the May meeting on July 21, as the deadline established to set the salaries under RSA 23:7 had expired. The petitioners sought a declaration that the Convention had violated the cited statutory provisions, and requested that the respondents be enjoined from raising, appropriating, or spending monies for the new salary levels. Further, the petitioners requested that the respondents be enjoined from further violations of the statutory provisions, that a monitor be appointed to review their compliance and provide periodic reports to the court, and that the petitioners be awarded attorney's fees.

In November, the trial court conducted a hearing on the petitioners' request for a preliminary injunction to enjoin the payment of any salaries, and not just payment of the approved raises, to the County's elected officials. It denied the petitioners' request, ruling that "[e]ven if the petitioners' claims are valid, the relief requested is inequitable because it would cause injury to the public far greater than any suffered as the result of improper notice of the May 21 [m]eeting."

Subsequent to the parties filing cross-motions for summary judgment, the trial court granted the petitioners' motion solely to the extent of ruling that the May 21 meeting was not properly noticed and was conducted in violation of RSA chapter 91-A and RSA 24:9-d. The trial court denied the petitioners' motion with respect to all other issues, and granted the respondents' cross-motion. Attorney's fees were not awarded to either the petitioners or the respondents. In response to the petitioners' motion for reconsideration, the trial court denied their request to enjoin future violations by the respondents of the statutory notice provisions and to appoint a monitor to ensure such compliance, as the court found "no basis for granting such relief in the circumstances presented." This appeal followed.

The petitioners contend that the trial court erred in: (1) concluding that the Convention had the authority on July 21, 2008, to ratify its May 21, 2008 vote on the salaries for the elected county officials, when the deadline established by RSA 23:7 to set those salaries had expired prior to the July 21 meeting; (2) granting the respondents' cross-motion for summary judgment in the absence of evidence that all potential candidates for the

county offices knew of the May 21 meeting or that salaries were to be set at that meeting; (3) failing to grant the petitioners the equitable relief sought, including a mandatory injunction and the appointment of a monitor; and (4) failing to award the petitioners attorney's fees. We address each argument in turn.

## II

The petitioners first contend that the trial court erred in denying, for the most part, their motion for summary judgment. In reviewing the trial court's summary judgment rulings, we consider the evidence in the light most favorable to each party in its capacity as the non-moving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. *Coco v. Jaskunas*, 159 N.H. 515, 518 (2009). Here, our decision turns on the interpretation of RSA 23:7. The interpretation of a statute is a question of law, which we review *de novo. Id.*

RSA 23:7 (2000) reads, in pertinent part:

> Every county convention shall have the power to establish salaries, benefits and other compensation paid to elected county officers including the county attorney, sheriff, register of deeds, treasurer, and county commissioners. . . . Said compensation shall be established biennially by the county convention prior to the filing date required under RSA 655:14 for the elected offices listed in this section . . . .

RSA 655:14 (2008) reads, in pertinent part:

> The name of any person shall not be printed upon the ballot of any party for a primary unless he . . . meets all the other qualifications at the time of filing, and he shall file with the appropriate official between the first Wednesday in June and the Friday of the following week a declaration of candidacy . . . .

We need not set forth here the text of either RSA 91-A:2, II or RSA 24:9-d, as it is undisputed that the May 21 meeting did not comply with the notice requirements of those statutes. It is also undisputed that the July 21 meeting *did* comply with those same notice requirements, and that the time period delineated in RSA 655:14 ended on Friday, June 13.

The petitioners argue that it was error for the trial court to conclude that the Convention had the authority on July 21, 2008, to ratify its earlier vote on the salaries for the elected county officials, because the deadline established by RSA 23:7 to set those salaries had expired prior to the July

21 meeting. They contend that, based upon the plain meaning of RSA 23:7, "the July 21, 2008 vote — whether considered as a ratification or a new original action — must be considered a nullity."

We first address the petitioners' threshold argument that the May 21 vote "was ineffective because it was defectively noticed." In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. *In re Juvenile 2005-212*, 154 N.H. 763, 765 (2007). We will not consider what the legislature might have said, or add words that it did not see fit to include. *Id.* at 766.

■ While RSA 23:7 mandates that compensation for certain elected county officers be established prior to the filing date required under RSA 655:14 (here, June 13, 2008), the statute is silent with regard to the consequences if its mandate is fulfilled by way of a meeting that did not comply with notice requirements provided by other statutes. Nothing in the plain language of RSA 23:7, however, provides that defective notice automatically rendered the May 21 vote a nullity, as argued by the petitioners. Indeed, we reiterate that in this case, the Convention did, at the May 21 meeting and pursuant to RSA 23:7, establish county compensation by vote well in advance of the June 13 deadline.

The May 21 meeting did not comply with the notice requirements of RSA 91-A:2, II or RSA 24:9-d. Although RSA 91-A:2, II (Supp. 2009) is silent with regard to the consequences for a violation of its provisions regarding notice, RSA 91-A:8, II (2001) provides that the superior court *may* invalidate an action of a public body taken at a meeting held in violation of the provisions of RSA chapter 91-A "if the circumstances justify such invalidation." We note that the petitioners have not, with regard to this issue, argued that the trial court unsustainably exercised its discretion by not invalidating the Convention vote. *See Lambert v. Belknap County Convention*, 157 N.H. 375, 381 (2008) (under RSA 91-A:8, II, decision whether to invalidate action is within discretion of the trial court). Consequently, the petitioners have not preserved this issue for appellate review. *See State v. Kincaid*, 158 N.H. 90, 95 (2008) (arguments not briefed are deemed waived).

RSA 24:9-d (Supp. 2009) is also silent with regard to the consequences for a violation of its provisions regarding notice. We have declined to invalidate the action of a county convention, in response to a defendant's assertion that the convention did not comply with the notice requirements of RSA 24:9-d, "[s]ince the defendant ha[d] not shown that anyone was prejudiced by a failure of the clerk [of the convention] to give notice."

*Cheshire v. Keene*, 114 N.H. 56, 59 (1974). The petitioners have not argued that they were prejudiced by the deficiency in notice for the May 21 meeting.

■■ The petitioners do contend that the trial court erred "in ignoring the plain meaning of RSA 23:7 establishing a deadline of June 13, 2008 to set those salaries by improperly applying legislative history to refute that plain meaning." It may be argued that the silence of RSA 23:7 creates an ambiguity with regard to the consequences of county compensation being established in a timely manner, but by way of an improperly noticed meeting. *See Juvenile 2005-212*, 154 N.H. at 766. Here, the trial court looked to the legislative history of RSA 23:7. *See id.* at 765-66 (if the statute is ambiguous, we will consider legislative history to aid our analysis); *Smith v. N.H. Bd. of Psychologists*, 138 N.H. 548, 551 (1994) (given statute's silence regarding remedy for failure to abide by mandatory time limits, court looked to statutory goals to determine appropriate mode of enforcement).

Prior to 1987, RSA 23:7 empowered counties to establish salaries biennially, but did not require them to do so before the candidates' filing deadline. In 1987, the current deadline was added to the statute, *see* Laws 1987, 223:1. Speaking on behalf of House Bill 62, which added the deadline, Senator Pressly stated:

> The second aspect of [the bill] makes it possible that the salary reviews of the elected officials will only take place once in the biennium and it will take place prior to the election. This will mean that anyone running for those offices will know, prior to running, exactly what their salary will be and they will fully understand that it will not be reviewed while they serve in office.

N.H.S. JOUR. 1208-09 (1987). We cannot say that the trial court erred in consulting legislative history.

Nor·do we find error in the trial court's interpretation of the statute regarding the consequences of a convention's vote on county salaries at an improperly noticed meeting before the June filing deadline. We agree with the trial court that nothing in the plain language of the statute indicates a legislative intent that defective notice automatically rendered the Convention's vote a nullity. Instead, we believe that the statute's linking of a convention's vote with the filing date for candidates indicates an intention to ensure that salaries for elected county officers are established before candidates must file notice of their intent to run for office. It is not intended to expose candidates and elected officials to significant changes in, or the loss of, salaries over the course of a biennium due to an error in notice committed by a convention.

■ Finally, we note that the plain language of RSA 23:7 forbids counties from establishing salaries for elected county officers at a lesser amount than those in effect on December 31, 1972. We agree with the trial court that it would be incongruous for the legislature to set these minimum salary requirements, while at the same time setting a deadline that could have the effect of depriving elected county officers of any salary based upon a procedural error of the county convention. *See Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 609 (2010) ("We will not interpret a statute to require such an illogical result.").

■ Consequently, we see nothing in the legislative history or statutory goals of RSA 23:7 to support the petitioners' argument. Having determined that the deficiencies in notice did not render the Convention vote ineffective, we need not consider whether the Convention had authority on July 21, 2008 to ratify its May 21 vote.

## III

The petitioners next contend that the trial court erred in granting the respondents' cross-motion for summary judgment in the absence of evidence that all candidates and potential candidates for the county offices knew of the May 21 meeting or that salaries were to be set at that meeting. They argue that the respondents, in opposing the petitioners' motion for summary judgment by asserting the defense of ratification, must set forth specific evidence of a genuine issue of material fact. According to the petitioners:

> The Respondents failed to demonstrate in the trial court, or establish in the record, any genuine issue of fact supporting this defense of ratification. They failed to provide any evidence that the supposed purpose of the salary-setting statute was achieved, even if it is limited to notifying candidates, rises to a genuine issue of material fact. Nor was there any evidence sufficient to create a triable issue offered as to whether this purpose was achieved. As such, the factual basis for ratification as argued by the Respondents and analyzed by the trial court in the Order was without factual foundation. The defense of ratification was argued in a factual void.
>
> . . . There was no evidence presented establishing such pre-deadline knowledge [of compensation levels] on the part of candidates, and therefore no record evidence supporting the defense of ratification in this case.

As we have held that the May 21 vote was not rendered ineffective by the notice deficiencies, we need not consider whether the respondents properly asserted a defense of ratification.

## IV

■ The petitioners next contend that the trial court erred in failing to grant the petitioners the equitable relief sought, including an injunction and the appointment of a monitor, in light of the respondents' violations of RSA chapter 91-A. In denying the petitioners' request, in November 2008, for a preliminary injunction to enjoin the payment of any salaries, and not just payment of the approved raises, to the County's elected officials, the trial court ruled that the requested relief was inequitable because it would cause injury to the public far greater than any suffered as the result of improper notice of the May 21 meeting. We agree. More importantly, however, we reiterate our holding that the May 21 vote was valid. Consequently, the petitioners cannot obtain an injunction against the payment of the salaries.

■ ■ The only issue remaining is whether the trial court erred in denying the petitioners' request that the respondents be enjoined from future violations of RSA 24:9-d and RSA chapter 91-A, and that a monitor be appointed to review future compliance with the statutes. RSA 91-A:8, III (2001) provides that the trial court *may* issue an order to enjoin future violations of RSA chapter 91-A. As it is a general rule of statutory construction that the word "may" is permissive in nature, we review the trial court's decision under our unsustainable exercise of discretion standard. *See Lambert*, 157 N.H. at 381.

> The propriety of affording equitable relief in a particular case rests in the sound discretion of the trial court. We, in turn, review an equitable order for an unsustainable exercise of discretion. The party asserting that a trial court order is unsustainable must demonstrate that the ruling was unreasonable or untenable to the prejudice of his case.

*Foley v. Wheelock*, 157 N.H. 329, 332 (2008) (quotation, citations, and ellipsis omitted).

■ Here, the record reflects that the May 21 meeting was noticed in the State of New Hampshire House Record on May 16. The meeting was neither closed to the public nor secret. The record also reflects that, upon request, Grafton County provided petitioner Hull with the documents relative to the May 21 meeting. Further, the record indicates that when informed of the defects in notice, the Convention cured those defects by

promptly and properly noticing the July 21 meeting. Under all of these circumstances, the trial court was not compelled either to issue the injunctive relief sought by the petitioners, or to appoint a court monitor to police future compliance with RSA chapter 91-A. *See, e.g., ATV Watch v. N.H. Dep't of Resources & Econ. Dev.*, 155 N.H. 434, 437-38 (2007) (issuance of injunction an extraordinary remedy, and should not issue unless there is, among other things, an immediate danger of irreparable harm to the party seeking injunctive relief). Consequently, we do not believe that the petitioners have demonstrated that the trial court's ruling was unreasonable or untenable to the prejudice of their case. As such, we cannot say that the trial court's decision to deny the petitioners the equitable relief they sought was an unsustainable exercise of discretion.

## V

Finally, the petitioners contend that the trial court erred in failing to award them attorney's fees, pursuant to RSA chapter 91-A. Specifically, they argue that if they are granted equitable relief (either or both the enjoining of possible future violations of RSA chapter 91-A and the appointment of a monitor to ensure future public notice and access), then

> this lawsuit will in fact have been brought, and will result in, the Petitioners and the public being freed from the disability of continuing violations of the Open Meeting Law by the Respondents.

RSA 91-A:8, I (Supp. 2009) states, in pertinent part:

> If any public body or agency or employee or member thereof, in violation of the provisions of this chapter, refuses to provide a governmental record or refuses access to a governmental proceeding to a person who reasonably requests the same, such public body, public agency, or person shall be liable for reasonable attorney's fees and costs incurred in a lawsuit under this chapter provided that the court finds that such lawsuit was necessary in order to make the information available or the proceeding open to the public.

We have already upheld the trial court's denial of equitable relief in this case. Further, and as noted, the record reflects that the May 21 meeting was neither closed to the public nor secret. The record also reflects that, upon request, Grafton County provided petitioner Hull with the documents relative to the May 21 meeting. Finally, the record is clear that when informed of the defects in notice, the Convention cured those defects

by promptly and properly noticing the July 21 meeting. As such, the petitioners have failed to show that they were either refused access to the May 21 meeting or denied access to any records concerning the meeting. Under these circumstances, the trial court was not compelled to find that the petitioners' lawsuit was necessary in order to make the information available or the proceeding open to the public. We reject the petitioners' argument and affirm the trial court's decision not to award attorney's fees.

*Affirmed.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.